**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-60677**
**Summary Calendar**
_____

**JOHN G. LAMEY,**

**Petitioner,**

**versus**

**INGALLS SHIPBUILDING, INC. and**
**DIRECTOR, OFFICE OF WORKERS'**
**COMPENSATION PROGRAMS, UNITED STATES**
**DEPARTMENT OF LABOR,**

**Respondents.**

_____

**Petition for Review of Decision and Order**
**of the Benefits Review Board,**
**United States Department of Labor**
**(93-LHC-1553)**
_____

June 11, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

John G. Lamey seeks review of the decision of the Benefits
Review Board, United States Department of Labor, affirming the
denial of benefits under the Longshore and Harbor Workers'
Compensation Act, 33 U.S.C. §§ _et. seq._ (LHWCA). We **AFFIRM** in part
and **VACATE** in part.

I.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

In 1971, Lamey worked for approximately 30 hours at Ingalls Shipbuilding, Inc. as a welder.  Most of the time, Lamey worked in two different buildings on land, learning welding and constructing parts to be placed on the ships being built.  According to Lamey, the work environment was "very loud", and noise level studies revealed that the welding machine he worked on yielded 85 decibels.

At some point, Ingalls told Lamey that "the next day", he would be working on board one of the ships.  Lamey walked onto the ship, looked around, and decided he did not want to work there — so he quit.  Lamey admitted that he never actually worked on board a vessel.  Upon leaving Ingalls, Lamey worked for other employers, including at Quality Marine, Inc. from 1974 through 1976, operating an electrical welding machine to construct bulkheads on shrimp boats.

In October 1988, Lamey filed a claim for compensation benefits under the LHWCA against Bender Shipbuilding Company, later amending his claim to name Ingalls as the responsible employer.  Lamey alleged, based on an audiogram that revealed a hearing loss of 8% in his right ear, 0% in his left ear, and a binaural hearing impairment of 1%, that he had suffered an occupational hearing loss of 8%.  Ingalls voluntarily paid Lamey $194.80 for his 1% binaural impairment.  However, Lamey sought additional benefits, and his case proceeded to trial in October 1993 before an Administrative Law Judge.

The ALJ found that Lamey failed to meet the jurisdictional requirements for pre-1972 coverage under the LHWCA; that Ingalls was not the last maritime employer to expose Lamey to injurious stimuli; that Lamey failed to establish a *prima facie* case against Ingalls; and that interest (if compensation had been awarded) would accrue only from the date of judicial demand. Consequently, Lamey's claim for benefits was denied, and Lamey was ordered to repay compensation Ingalls had previously paid him.

Lamey appealed to the Benefits Review Board, which summarily affirmed pursuant to provisions of the Omnibus Appropriations for Fiscal Year 1996, Pub. L. No. 104-134.

## II.

Our review of decisions of the Benefits Review Board is limited to "considering errors of law and ensuring that the Board adhered to its statutory standard of review, namely, whether the ALJ's findings of fact are supported by substantial evidence and consistent with the law". *Munguia v. Chevron U.S.A., Inc.*, 999 F.2d 808, 810 (5th Cir. 1993); *see* *Avondale Shipyards, Inc. v. Kennel*, 914 F.2d 88, 90 (5th Cir. 1990); *see also* 33 U.S.C. § 921(b)(3).

## A.

Lamey first challenges the ALJ's determination that he failed to meet the jurisdictional requirements for pre-1972 coverage under the LHWCA because there was no evidence that he was exposed to

noise while on board a vessel.  Lamey asserts that this conclusion is "contrary to the overwhelming evidence in this case".  This conclusion is supported by the evidence.

Prior to the 1972 amendments to the LHWCA, coverage was limited to injuries "occurring upon the navigable waters of the United States (including any dry dock)".  33 U.S.C. § 903(a) (1970).  Because Lamey admitted that he never actually worked on board a vessel while working for Ingalls, and because the only testimony as to his noise exposure concerned his land-based work, it is not possible that he was exposed to injurious noise levels on "navigable waters of the United States".

### B.

In the alternative, Lamey attacks the ALJ's findings that he failed to establish a *prima facie* entitlement to benefits and that there was a subsequent maritime employer that exposed Lamey to injurious noise stimuli.  Both findings are supported by substantial evidence and are consistent with the law.

Under the LHWCA, a claimant establishes a *prima facie* entitlement to benefits by showing that he "sustained physical harm and that conditions existed at work which could have caused the harm".  *See **Avondale Indus., Inc. v. Director, Office of Workers' Compensation Programs***, 977 F.2d 186, 190 (5th Cir. 1992) (citation and internal quotation marks omitted).  Thus, an essential element

of Lamey's claim is a causal connection between his hearing impairment and his employment with Ingalls.

In this case, Lamey failed to establish that there were working conditions at Ingalls that could have caused his hearing loss. Although it is undisputed that Lamey worked at Ingalls from July 26 to July 30, 1971, for a total of approximately 30 hours, Lamey introduced no evidence that exposure to noise for such a short period of time could have caused hearing loss. In fact, there was evidence in the record that one of the "most important features generally characteristic of occupational hearing loss" includes "long-term exposure to intense noise levels" and that such hearing loss usually develops "gradually, over a period of years". Five days of employment can hardly be considered long-term exposure.

In addition, such hearing loss is almost always bilateral, meaning the loss is the same in both ears, and while Lamey's audiogram revealed an 8% loss in his right ear, it showed a 0% loss in his left ear. Finally, Lamey's evidence that he had a hearing impairment *at the time he ceased working for Ingalls* is extremely tenuous; he left Ingalls in 1971, *but* his audiogram was not taken until 1988.

Even assuming that Lamey established a *prima facie* case, Ingalls could rebut this presumption by showing that Lamey "was exposed to injurious stimuli while performing work covered under

the [LHWCA] for a subsequent employer." *See **Avondale Indus.**,* 977 F.2d at 190 (citation and internal quotation marks omitted). Lamey last worked for Ingalls in 1971, but worked for Quality Marine from 1974 through 1976 as a welder on the bulkhead of a shrimp boat. Lamey's audiogram was performed in 1988, after working for both Ingalls and Quality Marine. Thus, if Ingalls established that Quality Marine exposed Lamey to injurious noise levels, Lamey's claim would fail.

Lamey testified that he used an electric welding machine while working for Quality Marine. Noise level studies from Ingalls revealed that a center fillet welding machine yielded 85 decibels, and aluminum welding elsewhere at Ingalls tested at 89 and 93 decibels. Studies of other shipbuilding factories showed readings ranging from 82 to 103.7 decibels for welders. Expert testimony at trial revealed that noise levels of 85 decibels and above is potentially injurious and that some individuals can even be injured by levels lower than 85 decibels. In sum, there was ample evidence to support the ALJ's findings that Lamey failed to establish the causation element of his *prima facie* case and that Ingalls successfully established that it was not the last maritime employer to expose Lamey to injurious noise levels.

C.

Because we conclude that the ALJ was correct in denying Lamey's claim for benefits, we need not address the determination

that any interest due to Lamey would accrue only from the date of judicial demand.

D.

As a final matter, Lamey maintains that the ALJ was without jurisdiction or authority to order him to repay to Ingalls the compensation it had previously paid. Ingalls responds that, "[s]olely for the purposes of this claim", it agrees to an order vacating this holding. We therefore vacate the order to that extent.

III.

For the foregoing reasons, the order of the Benefits Review Board is

**AFFIRMED in part and VACATED in part.**

- 7 -